MIRIAM ROSEN, *et vir,* and OLYMPIA SECURITIES, INC., v. DORN-KOTHE, INC.

171 So. 646.

Opinion Filed December 31, 1936.

*Stapp, Gourley, Ward & Ward,* for Appellants;

*J. M. McCaskill,* for Appellee.

BUFORD, J.—The appeal is from an order dismissing the petition of Miriam Rosen, joined by her husband, Leo Rosen, and Olympia Securities, Inc., a Florida corporation, dated July 31, 1936. That order was as follows:

"The above styled matter comes on before this Court to be heard upon the petition of Miriam Rosen filed July 18, 1936, and motion to dismiss same filed by Dorn-Kothe, Inc., on July 24, 1936, and treating said motion as a demurrer admitting all facts well pleaded and it being further ad-

mitted that the petitioner was never placed in possession, it appears unto this Court that the petitioner's remedy, if any she has, is at law, it is, therefore,

"ORDERED, ADJUDGED AND DECREED that said petition be and the same is hereby overruled and denied, saving unto said petitioner all her rights and remedies at law.

"IT IS FURTHER ORDERED that the claim to said surplus embraced in the petition of Dorn-Kothe, Inc., be and the same is hereby allowed and granted, and the Clerk of this Court on or after August 10, 1936, is hereby directed to disburse to said Dorn-Kothe, Inc., or its solicitor of record herein, the said surplus heretofore deposited by the Master, less his fees and commissions for so receiving and disbursing the same."

The final decree was entered on February 17, 1936.

The final decree was in a foreclosure suit. In that suit John J. Kobek and Rose Kobek were complainants and Dorn-Kothe, Inc., a corporation, and others, including the appellants here, were defendants. The decree provided, among other things, as follows:

"In case the amount realized at said sale should be more than sufficient to pay the total of the several sums herein ordered to be paid, the surplus shall be paid into the Registry of this Court to be distributed under such decree as may hereinafter be made by this Court."

On July 16, 1936, Miriam Rosen and her husband, Leo Rosen, and Olympia Securities, Inc., filed petition to be allowed to participate in the surplus fund. Attached to the petition was a contract for purchase and sale of the real estate involved in the foreclosure in the following language:

"RECEIPT IS HEREBY ACKNOWLEDGED OF THE SUM OF:

"Two HUNDRED AND FIFTY AND No/100 DOLLARS ($250.00) from OLYMPIA SECURITIES, INC., as a deposit

on account of the purchase price of the following described property upon the terms and conditions as stated herein.

"Description of property: West 25 feet of Lot 15, Block 105 North, City of Miami, Dade County, Florida.

"This property is sold subject to existing lease.

"Purchase Price: Sixteen Thousand and No/100 Dollars ($16,000.00).

"Terms and conditions of sale: $2,130.00 cash, of which the above $250.00 is a part; assume first mortgage for $9,-500.00 due on or before five years, bearing interest at 6% per annum payable semi-annually; execute second mortgage for $4,370.00 due on or before 1, 2 and 3 years in equal annual payments, bearing interest at 6% per annum, payable semi-annually.

"Deferred payments to bear interest at the rate of 6 per cent. per annum, payable as follows: Semi-annually.

"Taxes, insurance, interest, rents and revenue of said property shall be prorated as follows: as of date of closing.

"Certified liens shall be paid as follows: by seller.

"Pending liens shall be paid as follows: by seller.

"It is agreed that this transaction shall be closed and the purchaser shall pay the balance of the first payment and execute all papers necessary to be executed by him for the completion of his purchase within five days from delivery or tender to him of an abstract of the said property; otherwise the sum this day paid shall be retained by the seller as liquidated and agreed damages, and the seller shall be relieved from all obligations under this instrument.

"The seller is to furnish an abstract showing his title to be good and marketable, but in the event that the title shall not be found good and marketable, the seller agrees to use reasonable diligence to make the said title good and marketable, and shall have a reasonable time so to do, and if

after reasonable diligence on his part said title shall not be made good and marketable within a reasonable time, the seller shall return the money this day paid and all moneys that may have been paid to him under this contract and thereupon he shall be released from all obligations hereunder. Or, upon request of the purchaser he shall deliver the title in its existing condition.

"This contract shall be binding upon both parties when approved by the owner of the property above described.

"WM. W. SHIPP, Broker.

"By WM. W. SHIPP.

"I, or we, agree to purchase the above described property on the terms and conditions stated in the foregoing instrument:

"Witness:

"........................................ OLYMPIA SECURITIES, INC. (SEAL)

"........................................ By Yasel Pegarie, Sec.

"I, or we, agree to sell the above mentioned property to the above named purchaser on the terms and conditions stated in the above instrument.

"Witness:

"........................................ E. H. THREADGILL (SEAL)

"........................................ AMY S. THREADGILL (SEAL)

"I, or we, agree to pay to the above signed broker, as commission, the sum of EIGHT HUNDRED Dollars ($800.00) or one-half of the deposit, in case same is forfeited by purchaser, provided the same shall not exceed the full amount of the commission.

"Witness:

"........................................ E. H. THREADGILL (SEAL)

"........................................ ........................................ (SEAL)

"Miami, Fla., June 3rd, 1935.

"For Ten Dollars and other good and valuable consideration, we hereby assign to the Tavern Investment Company, all our right, title and interest in the within described contract.

"OLYMPIA SECURITIES, INC.
"By Yasel Pegarie, Sec.

"For Ten Dollars and other good and valuable considerations, we hereby assign to Miriam Rosen, all our right, title and interest in the within described contract.

"TAVERN INVESTMENT COMPANY.
"By R. Storey, President."

On July 6, 1936, Dorn-Kothe, Inc., had filed petition for the surplus to be paid to it and on July 16, Miriam Rosen, Leo Rosen and Olympia Securities, Inc., filed answer to the petition of Dorn-Kothe, Inc.

Motion was also filed to dismiss the answer of the Rosens and Olympia Securities, Inc.

It has been necessary to set out the above so as to show the status of the transaction. When Leo Rosen and Miriam Rosen filed their answer to the foreclosure suit instead of setting up any claim to the property or lien on the proceeds therefrom, they answered in one. paragraph as follows:

"That these defendants are without knowledge as to the allegations contained in Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 of the complainant's bill of complaint and demand strict proof thereof."

The allegations of the petition of the Rosens and Olympia Securities, Inc., was in effect that:

On May 9, 1935, Olympia Securities, Inc., had entered into a contract in writing with E. H. and Amy S. Threadgill, acting for and on behalf of Dorn-Kothe, Inc., for the purchase of the lands involved in this foreclosure for the

sum of $16,000.00, $2,130.00 to be paid in cash of which $250.00 was paid as binder, purchasers to assume a first mortgage of $9,500.00 due on or before five years from date bearing interest at 6%, payable semi-annually (date of first mortgage was not alleged) and purchasers agreed to execute a second mortgage for the sum of $4,370.00 to be due on or before 1, 2, and 3 years with equal annual payments with interest at 6% per annum payable semi-annually; that the seller agreed to furnish a good marketable title. Olympia Securities, Inc., assigned the contract to Tavern Investment Company and Tavern Investment Company made an assignment of the same to Miriam Rosen. Incident to the assignment from Olympia Securities, Inc., to Tavern Investment Company these parties entered into a written agreement whereby Olympia Securities, Inc., acknowledged receipt of $500.00 as part consideration or as a deposit on the purchase price. It was agreed that Tavern Investment Company would pay to Olympia Securities, Inc., the sum of $2,000.00 as a profit on the contract; that the $500.00 deposit would apply one-half as a refund of the earnest payment made by Olympia Securities, Inc., to the Threadgills and the remaining $25.00 to apply on the balance of the profit to be paid to Olympia Securities, Inc. Upon the assignment from Tavern Investment Company to Miriam Rosen the latter assumed the burdens and benefits of all contracts. The petition alleges the existence of certain facts resulting in the conclusion that Dorn-Kothe, Inc., was the *alter ego* of the Threadgills above named and was merely a conduit through which and in the name of which the Threadgills transacted business and held title to lands and that in this transaction the contract of E. H. and Amy S. Threadgill was in truth and in fact the contract of Dorn-Kothe, Inc. It alleged that pursuant to the contract Dorn-

Kothe, Inc., had prepared a warranty deed and sent the same to First National Bank of Miami, Florida, to be delivered, conveying title under the terms of the contract; that such deed was transmitted in July, 1935. It alleged that upon examination of the abstract it was found that the property was encumbered by a second mortgage. It is alleged that petitioners procured satisfaction of the second mortgage, but it is not alleged that they were put to any expense thereby.

It is further alleged that Dorn-Kothe, Inc., failed to carry out the terms of the contract. Under the foreclosure of the mortgage assumed in the original contract the property brought $18,100.00. The total mortgage indebtedness, including costs, was $12,317.64. The petitioners aver that all surplus above the balance of the agreed purchase price, which was $15,750.00, being, to-wit: $2,350.00, should be paid to the defendants, Olympia Securities, Inc., and Miriam Rosen. That of this amount Olympia Securities, Inc., is entitled to the sum of $1,750.00 and Miriam Rosen is entitled to the remainder, to-wit, $600.00.

The contract of purchase and sale was not witnessed and was not acknowledged. Olympia Secuities, Inc., did not go into possession of the property.

It will be observed from the order appealed from hereinbefore quoted that the Chancellor held because of the above stated facts, "that the petitioner's remedy, if any she has, is at law."

The foreclosure of the mortgage establishes the fact that the petitioner did not discharge the mortgage by payment.

It appears to be settled beyond all question that one claiming a surplus or the right to share in a surplus resulting from a sale under foreclosure must either own the equity of redemption at the time of the sale or must be one then

holding a lien or vested right in the property. In Jones on Mortgages, 7th Ed., Sec. 1684, the author says:

"Surplus money arising from a sale of land under a decree of foreclosure stands in the place of the land itself in respect to liens thereon or vested rights therein."

To the same effect is 19 R. C. L. 661, Sec. 477, and 42 C. J. 317.

In Tuttle v. Ehrehard, 102 Fla. 1129, 137 Sou. 245, it is held:

"A court of equity sitting to distribute an excess brought into the custody of the court, such as proceeds from a foreclosure sale, has full and complete jurisdiction to determine all justiciable rights made necessary to be determined in order to fix the priorities of claimants to the excess fund.

Freedom from default by a vendee under a land sales contract is a determining condition as to the vendee's lien for down payments made under the contract. The lien only arises when the vendor is in default for not completing the contract according to its terms and the vendee is not in default so as to prevent him from recovering the purchase money paid. A purchaser who abandons the contract or refuses to perform according to its terms is not entitled to a lien to secure him from loss of his payments because of his own breach."

It appears to us that this enunciation rules the instant case and that under application thereof Miriam Rosen standing in the place of Olympia Securities, Inc., was entitled to have decreed to her from the surplus in the registry of the court the amount of the down payment, to-wit: $250.00, and that to the extent that this right was denied the order appealed from was erroneous.

The order is, therefore, reversed with directions that an order be entered in this regard not inconsistent with the views herein expressed.

It is so ordered.

Reversed with directions.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.