JACOBUS, J.
RSC Corporation, LLC, d/b/a Ace Wrecker and Ace Auto Parts (collectively “RSC”), appeals a non-final order granting a motion for vehicle release filed by Hertz Vehicles, LLC.[1] On appeal, RSC contends the court erred in returning the vehicle to Hertz pursuant to section 713.78, Florida Statutes. RSC also claims it complied with the notice requirements contained in section 713.78, Florida Statutes. We agree that it was error for the court to release the vehicle to Hertz; however, we must conclude that RSC did not provide proper notice to Hertz as required by stat *360 ute. Therefore, the non-final order is affirmed in part and reversed in part.
On March 29, 2010, RSC, which is a company regularly engaged in the business of recovering, towing, and storing vehicles, towed a 2009 Chevrolet Tahoe at the request of the Orange County Sheriffs Office after a traffic stop and arrest. The Tahoe, which was titled in the Commonwealth of Virginia, had been stolen and was owned by Hertz. The Tahoe had a first-priority lien on its title in favor of Bank of New York Mellon Trust Company NA. After the Tahoe was stolen from Hertz, its proper Virginia license plate was replaced by a stolen Florida license plate.
After RSC towed the Tahoe to its lot, the Orange County Sheriffs Office provided it with a vehicle disposition report that identified the owner of the Tahoe as EAN Holdings, LLC. However, the Orange County Sheriffs Office obtained the information regarding ownership of the Tahoe by using the stolen tag to determine its VIN number and the owner. Since the tag had been stolen, it was not the correct VIN number for the Tahoe nor was EAN Holdings, LLC, the owner. Subsequently, the correct VIN number for the Tahoe was discovered by RSC, and RSC made two inquiries for identification and other information through the Orange County Tax Collector’s “Tag Talk System,” which accesses data from the Florida Department of Highway Safety and Motor Vehicles. After making the inquiry, RSC was unable to identify a registered owner, insurance company insuring the vehicle, or any lien-holders that might claim an interest in the vehicle. RSC then notified the Orange County Sheriffs Office that it had made a good faith effort to locate the owner, insurer, or lienholder without success. RSC then received a response from the Orange County Sheriffs Office identifying Hertz as the Tahoe’s owner. The response included a Virginia address for Hertz. RSC sent a notice of claim of lien and a notice of proposed sale concerning the Tahoe to Hertz at its address in Virginia and to EAN Holdings, LLC. Both notices were sent by certified mail. RSC was not contacted by anyone, including Hertz or any lienholder, claiming to have an interest in the Tahoe before the sale. RSC sold the Tahoe to Ace Auto Parts, which then sold the Tahoe to Fischer Nissan Dealership. Fischer Nissan sold the Tahoe to an undisclosed third party on May 21, 2010.
On June 30, 2010, Hertz learned RSC had towed the Tahoe. On July 9, 2010, Hertz filed a complaint in county court demanding the return of the Tahoe from RSC and Fischer Nissan. The Tahoe was not returned. Hertz then filed suit in the circuit court against RSC, Ace Auto Parts, Fischer Nissan and the third-party who purchased the vehicle. In its complaint, Hertz alleged: (1) wrongful possession and disposition in violation of section 713.78; (2) unjust enrichment; (3) conversion; and (4) civil theft.
Hertz then filed a motion for release of the vehicle. In that motion, Hertz agreed to pay the amount of the charges for towing and storage of the vehicle. Hertz requested that the county comptroller issue a certificate notifying RSC of the posting of the bond and directing RSC to release the Tahoe to Hertz’s custody. Hertz argued that RSC’s failure to comply with the notice requirements of section 713.78(4)(a) renders null and void the sale at which Ace Auto Parts purchased the Tahoe from RSC. As such, Hertz claimed it was the proper owner of the Tahoe.
The trial court granted Hertz’s motion and ordered the Tahoe to be returned to it. The court found that RSC failed to fully and strictly comply with the notice requirements of section 713.78 and that RSC had not made a good faith effort to deter *361 mine the owner, any lienholders, or any insurance company as required by statute. The court further found that once RSC knew Hertz was located in Virginia it was required to check with Virginia’s Department of Motor Vehicles pursuant to section 713.78(4)(a) to identify the owner, lienholder, and insurance company. The court ordered RSC to immediately release the Tahoe into Hertz’s custody upon Hertz’s payment of a cash bond.
On appeal, RSC contends it was error for the court to order immediate possession of the Tahoe to Hertz because it complied with all requirements of section 713.78. In particular, RSC claims it complied with the notice requirements located in section 713.78(4).
An appellate court reviews a matter of statutory interpretation de novo. Gomez v. Vill. of Pinecrest, 41 So.3d 180, 185 (Fla.2010). In interpreting a state statute, a reviewing court must examine the plain meaning of the language used in the statute. Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So.2d 787, 790 (Fla. 2d DCA 2005). When the language of a statute is clear and unambiguous, a court may not resort to the rules of statutory construction. Rollins v. Pizzarelli, 761 So.2d 294, 297 (Fla.2000). Rather, “the statute must be given its plain and obvious meaning.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). A statute is ambiguous if reasonable people “can find different meanings in the same language.” Rollins, 761 So.2d at 297 (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)).
Section 713.78 deals with liens for recovering, towing, or storing vehicles and vessels. When “a person regularly engaged in the business of transporting vehicles ... by ... tow truck removes, or stores a vehicle or vessel upon instructions from ... [a]ny law enforcement agency” he is entitled to “a lien on the vehicle for a reasonable towing fee and a reasonable storage fee.” § 713.78(2)(c), Fla. Stat. It is undisputed that RSC is in the business of regularly transporting vehicles by tow truck and that it was asked by the Orange County Sheriffs Office to transport the vehicle. Thus, this case is governed by section 713.78.
Section 713.78(4) sets forth the notice requirements that a towing company must follow when towing a vehicle. It states, in relevant part, as follows:
(4)(a) Any person regularly engaged in the business of recovering, towing, or storing vehicles or vessels who comes into possession of a vehicle or vessel pursuant to subsection (2), and who claims a lien for recovery, towing, or storage services, shall give notice to the registered owner, the insurance company insuring the vehicle notwithstanding the provisions of s. 627.736, and to all persons claiming a lien thereon, as disclosed by the records in the Department of Highway Safety and Motor Vehicles or of a corresponding agency in any other state.
(b) Whenever any law enforcement agency authorizes the removal of a vehicle or vessel ... the law enforcement agency of the jurisdiction where the vehicle or vessel is stored shall contact the Department of Highway Safety and Motor Vehicles, or the appropriate agency of the state of registration, if known, within 24 hours through the medium of electronic communications, giving the full description of the vehicle or vessel. Upon receipt of the full description of the vehicle or vessel, the department shall search its files to determine the owner’s name, the insurance company insuring the vehicle or vessel, and *362 whether any person has filed a lien upon the vehicle or vessel as provided in s. 319.27(2) and (3) and notify the applicable law enforcement agency within 72 hours. The person in charge of the towing service, garage, repair shop, or automotive service, storage, or parking place shall obtain such information from the applicable law enforcement agency within 5 days after the date of storage and shall give notice pursuant to paragraph (a) ....
§ 713.78(a) & (b), Fla. Stat. (emphasis supplied).
Under subsection (4)(a), a towing company is required to give notice to the owner, insurance company, and all persons claiming a lien, as disclosed by the records of the Department of Highway Safety and Motor Vehicles or a corresponding agency in another state. Subsection (4)(b) applies when a law enforcement agency authorizes the removal a vehicle and contacts a towing company to accomplish that result. Here, the Orange County Sheriffs Office contacted RSC to remove the vehicle. Therefore, it is necessary to first look to subsection (4)(b) when determining the notice requirements RSC was required to follow.
According to subsection (4)(b), the law enforcement agency of the jurisdiction where the vehicle is stored must contact the Department of Highway Safety and Motor Vehicles, or the appropriate agency of the state of registration, and provide the full description of the vehicle. Thereafter, the department must search its files to determine the owner’s name, the insurance company of record, and whether a person has filed a lien on the vehicle. It must then notify the law enforcement agency. The person in charge of the towing company must then contact the relevant law enforcement agency within five days after the date of storage and obtain that information. The towing company must thereafter give notice pursuant to section 713.78(4)(a). Subsection (4)(a) requires the towing company to give notice to the owner, insurance company insuring the vehicle, and all lienholders, “as disclosed by the records in the Department of Highway Safety and Motor Vehicles or of a corresponding agency in any other state.”
Sections 713.78(4)(a) and (b) are clear and unambiguous. When read together, these provisions require law enforcement to initially contact the Department of Highway Safety and Motor Vehicles and relay that information to the towing company. After this has been accomplished, the tow company must comply with subsection (a) and contact the owner, insurer, and any lienholder. Subsection (a) clearly states that the towing company shall provide notice as disclosed by the Department of Highway Safety and Motor or a corresponding agency in another state if necessary. Nothing in subsections (a) or (b) states that a towing company may rely solely on the information provided by law enforcement. Rather, subsection (4)(a) suggests a towing company is required to contact another state, if the car is registered outside of Florida, to determine the identity of the owner, insurer, and any lienholders that may exist.
Here, the evidence establishes that RSC contacted Orange County’s “Tag Talk System.” When RSC contacted the Orange County Sheriffs Office, it identified Hertz as the owner and provided RSC with the address for Hertz, which was located in Virginia. Based on this information, RSC sent a notice of sale to Hertz in Virginia. Even though RSC knew that the vehicle’s owner was located in Virginia, it did not contact any agencies in Virginia to determine whether there was an insurer or a lienholder having an interest in the vehicle. Because this was error under the *363 notice requirements contained in section 713.78(4), the court was correct in finding RSC did not fully comply with the notice requirements of section 713.78. As such, RSC was not entitled to any charges that arose from storing the vehicle. See § 713.78(9), Fla. Stat. (“Failure to make good faith best efforts to comply with the notice requirements of this section shall preclude the imposition of any storage charges against such vehicle or vessel.”); Ford Motor Credit Co. v. Sw. Transp., Inc., 668 So.2d 1068, 1070 (Fla. 3d DCA 1996) (towing company must forfeit storage charges for vehicle where it did not use good faith best efforts to comply with requirements of section 713.78).
RSC also claims the court erred in returning the Tahoe to Hertz after it was sold at auction. Section 713.78(5)(a) allows the owner of a vehicle or any person claiming a lien on the vehicle to file a complaint in the county court of the county in which the vehicle is stored within ten days of knowing where the vehicle is located. The purpose of the complaint is to allow the owner to determine whether his property was wrongfully taken or withheld from him. The remainder of section 713.78(5) reads as follows:
(b) Upon filing of a complaint, an owner or lienholder may have her or his vehicle or vessel released upon posting with the court a cash or surety bond or other adequate security equal to the amount of the charges for towing or storage and lot rental amount to ensure the payment of such charges in the event she or he does not prevail. Upon the posting of the bond and the payment of the applicable fee set forth in s. 28.24, the clerk of the court shall issue a certificate notifying the lienor of the posting of the bond and directing the lienor to release the vehicle or vessel. At the time of such release, after reasonable inspection, she or he shall give a receipt to the towing-storage company reciting any claims she or he has for loss or damage to the vehicle or vessel or the contents thereof.
(c) Upon determining the respective rights of the parties, the court may award damages, attorney’s fees, and costs in favor of the prevailing party. In any event, the final order shall provide for immediate payment in full of recovery, towing, and storage fees by the vehicle or vessel owner or lienholder; or the agency ordering the tow; or the owner, lessee, or agent thereof of the property from which the vehicle or vessel was removed.
Section 713.78(6) discusses the remedies available to an owner or lienholder if he learns of his vehicle’s location after the vehicle has been sold by the towing company. It states, in relevant part:
(6) Any vehicle or vessel which is stored pursuant to subsection (2) and which remains unclaimed, or for which reasonable charges for recovery, towing, or storing remain unpaid, and any contents not released pursuant to subsection (10), may be sold by the owner or operator of the storage space for such towing or storage charge after 35 days from the time the vehicle or vessel is stored therein if the vehicle or vessel is more than 3 years of age or after 50 days following the time the vehicle or vessel is stored therein if the vehicle or vessel is 3 years of age or less. The sale shall be at public sale for cash.... The owner or lienholder may file a complaint after the vehicle or vessel has been sold in the county court of the county in which it is stored. Upon determining the respective rights of the parties, the court may award damages, attorney’s fees, and costs in favor of the prevailing party.
§ 713.78(6), Fla. Stat. (emphasis supplied).
It is clear from these provisions of the statute that subsection (5) applies when an *364 owner or lienholder files a complaint while the vehicle is in storage. Subsection (6), on the other hand, applies when an owner or lienholder files a complaint after his vehicle has already been sold at auction.
Here, RSC sold the Tahoe on May 21, 2010.[2] Hertz learned of the vehicle’s location on June 30, 2010, and filed its complaint on July 9, 2010. Given this timing, subsection (6) applies to the present circumstances. Subsection (6) plainly states that “[t]he owner or lienholder may file a complaint after the vehicle ... has been sold in the county court of the county in which it is stored. Upon determining the respective rights of the parties, the court may award damages, attorney’s fees, and costs in favor of the prevailing party.” § 713.78(6), Fla. Stat. (emphasis supplied). There is no mention in this subsection that the court may return the vehicle to an owner or lienholder who prevails in his suit against a towing company. The lack of express language in the statute allowing an owner or lienholder to recover his vehicle suggests the legislature did not intend for such a remedy to be available. See Fed. Ins. Co. v. Sw. Fla. Ret. Ctr., Inc., 707 So.2d 1119, 1122 (Fla.1998) (concluding that absence of express language in statute is clear evidence that legislature did not intend to provide discovery rule in statute). The fact that subsection (5)(c) requires that the final order provide for the payment of “recovery fees,” but section (6) does not discuss “recovery fees” is further evidence that the legislature did not intend for a lienholder or owner filing a complaint after the sale of the vehicle to be able to recover the vehicle. See United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir.1972) (“[W]here Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.”). Because suit was filed after the Tahoe was sold, section 713.78(6) controls and Hertz was entitled to recover “damages, attorney’s fees, and costs,” but it was not entitled to recover the Tahoe. Therefore, the order granting possession of the Tahoe to Hertz is reversed and the matter is remanded for further proceedings pursuant to section 713.78(6).
REVERSED and REMANDED.
SAWAYA and PALMER, JJ„ concur.

. We have jurisdiction. See Fla. R.App. P. 9.130(a)(3)(C)(ii) (orders that determine "the rights to immediate possession of property” are appealable non-final orders); Boalt v. Hanson, 412 So.2d 880, 881 (Fla. 3d DCA 1982) (district court has jurisdiction pursuant to rule 9.130(a)(3)(C)(ii) to review order granting immediate right of possession of automobile).

. The 2009 Tahoe was towed March 29, 2010. Thus, pursuant to the statute, RSC was required to wait 50 days to sell the Tahoe from the time it was towed. RSC complied with this requirement, as it sold the Tahoe 53 days after it was towed.